**In re THOMAS BROTHERS RESTAURANT CORPORATION ONE, Debtor.**

**Bankruptcy No. SB 94–19800–DN.**

United States Bankruptcy Court,
C.D. California.

Feb. 6, 1996.

Nora M. Manella, United States Attorney, Edward M. Robbins, Jr., Assistant United States Attorney, Chief, Tax Division, Richard G. Stack, Assistant United States Attorney, Los Angeles, CA, for United States of America.

UNITED STATES' ALTERNATIVE OR-
DER DENYING RESTAURANT
VENTURES, LLC'S MOTION: (1) TO
ALTER OR AMEND ORDER RE DIS-
BURSING AGENT'S OBJECTIONS
TO CERTAIN WAGE, PRIORITY,
AND ADMINISTRATIVE CLAIMS
AND (2) FOR ORDER SUSTAINING
OBJECTIONS TO CERTAIN AL-
LEGED PRIORITY CLAIMS; OVER-
RULING RESTAURANT VEN-
TURES' OBJECTIONS TO CERTAIN
ALLEGED PRIORITY CLAIMS;
AND ALLOWING PRIORITY TAX
CLAIMS OF INTERNAL REVENUE
SERVICE

DAVID N. NAUGLE, Bankruptcy Judge.

The hearing on the "MOTION: (1) TO ALTER OR AMEND ORDER RE DIS-BURSING AGENT'S OBJECTIONS TO CERTAIN WAGE, PRIORITY, AND AD-MINISTRATIVE CLAIMS AND (2) FOR ORDER SUSTAINING OBJECTIONS TO CERTAIN ALLEGED PRIORITY CLAIMS" and "OBJECTIONS TO CER-TAIN ALLEGED PRIORITY CLAIMS," etc. ("Motion and Objections") filed by Restaurant Ventures, LLC, a California Limited Liability Company, came on for hearing before the Honorable David N. Naugle, United States Bankruptcy Judge, on December 5, 1995 at 9:00 a.m. Richard G. Stack, Assistant United States Attorney, appeared on behalf of the United States and its agency, the Internal Revenue Service ("IRS"), in opposition to the Motion and Objections and Kendall R. Paulson, Esquire, appeared on behalf of Restaurant Ventures, LLC, in support of the Motion and Objections. Other appearances were made as noted in the record. The Motion and Objections came on for continued hearing on February 6, 1996 at 9:00 a.m. for the sole purpose of determining the form of the Order to be entered in this matter. Appearances were made at the continued hearing as noted in the record.

Wherefore, based upon the papers presented by counsel and oral argument, **IT IS ORDERED, ADJUDGED, AND DE-CREED** as follows:

1. Restaurant Ventures, LLC is a "party in interest" with standing to bring the instant Motion and Objections, since it would be liable for the payment of the IRS's unsecured priority tax claims if such claims are allowed by the Court.

2. The Motion and Objections filed by Restaurant Ventures, LLC, to the extent that they pertain to the unsecured priority tax claims of the IRS, are hereby denied and overruled on the merits.

3. To the extent that the tax claims of the IRS exceed the amounts set forth in paragraph 4 below, the United States stipulated with Restaurant Ventures on the record at the December 5, 1995 hearing that the IRS had withdrawn and would not pursue such

claims against Restaurant Ventures and that the IRS waived any rights that it might otherwise possess against Restaurant Ventures as to such claims.

4. The unsecured priority tax claims of the Internal Revenue Service for unpaid withholding and Federal Insurance Contribution Act ("FICA") taxes incurred by the Debtor during the third quarter of 1991, the fourth quarter of 1993, the first and second quarters of 1994, and the period from July 1 to July 21, 1994, and unpaid Federal Unemployment Tax Act (hereafter "FUTA") taxes incurred during the calendar year 1992, and pre-petition interest thereon, are hereby allowed in the total amount of $104,880.02. The unsecured priority tax claims of the IRS shall be paid by Restaurant Ventures, in accordance with the terms of the Amended Liquidating Plan of Reorganization ("Amended Plan") confirmed by this Court on May 12, 1995. In particular, such claims shall be paid by Restaurant Ventures according to the provisions of the Amended Plan, at page 51, line 26 through page 52, line 17 (i.e., either (1) as soon as practicable after the Effective Date; or (2) in deferred Cash payments extending over six years after the date of the assessment of the Priority Tax Claim. Deferred payments, if any, will be made by Restaurant Ventures commencing six months after the Effective Date and every six months thereafter until maturity; the unpaid portion of the Priority Tax Claim will bear interest at the rate provided by applicable nonbankruptcy law; and the payments will be in amounts sufficient to amortize the claim over the term of the repayment).

5. The specific basis for the above findings is explained below.

6. The Amended Plan expressly provides that Restaurant Ventures (i.e., the "Acquiring Entity") assumed the payment of the Secured and Priority Tax Claims, including the unsecured priority tax claims of the IRS. When the Court confirmed the Amended Plan, it understood and intended that Restaurant Ventures would pay the secured and unsecured priority tax claims of the IRS and other taxing authorities. Since the Disbursing Agent under the Amended Plan does not have sufficient assets with which to pay the IRS's unsecured priority tax claims, such claims will not be paid at all if they are not paid by Restaurant Ventures. In this regard, Disbursing Agent Weneta M.A. Kosmala represented to the Court at the December 5, 1995 hearing on the Motion and Objections that she presently is holding cash in the approximate sum of $45,000.00, and that such funds will primarily be used to pay the remaining administrative expenses of the estate, including a post-petition tax claim of the IRS for unpaid FICA and withholding taxes for the period from July 21, 1994 to September 30, 1994 in the amount of $10,133.20, plus applicable interest and penalties.

7. The Amended Plan provides for the payment of priority tax claims "to the extent that they exist," in accordance with the basic requirements of 11 U.S.C. § 1129(a)(9)(C) (i.e., payment of such claims in deferred cash payments over a period not exceeding 6 years after the assessment date). *See* Amended Plan, page 51, line 26 through page 52, line 17. Further, the Amended Plan defines *Priority Claim* as "Any Claim, other than an Administrative Expense Claim, to the extent entitled to priority in payment under section 507(a) of the Bankruptcy Code." *See* Amended Plan, page 44, lines 25 through 28. The definition of "Priority Claim" in the Amended Plan does not mention anything about late-filed claims being denied priority status. The definition of "Allowed Claim" in the Amended Plan also makes no reference to Priority Claims. Moreover, the Amended Plan contains an express exception to the requirement for filing a proof of claim, if the claim is otherwise allowed by the Plan. *See* Amended Plan, page 29, line 27 to page 30, line 1; page 80, lines 22 through 26. Priority Claims are separately defined under the Amended Plan (*see* page 44, lines 25 through 28) and are expressly allowed and provided for under the Amended Plan. *See* Amended Plan, page 51, line 26 through page 52, line 17. Consequently, the provisions in the Amended Plan that refer to "Allowed Claim," and "Bar Date" should be construed as referring *only to general unsecured claims* and not to Priority Claims. Such a construction is consis-

tent with the terms of the Amended Plan and the principle of contractual and statutory interpretation that a specific provision (here, the definition and treatment of priority claims) controls over a more general provision. Similarly, such a construction is consonant with the plain language of 11 U.S.C. §§ 501 and 502 in effect when the petition was filed in this case and with the decision in *In re Pacific Atlantic Trading Co.*, 33 F.3d 1064 (9th Cir.1994). The provisions of the Amended Plan also should be interpreted and read in light of the *Pacific Atlantic* decision. Therefore, any ambiguity in the Amended Plan with regard to the payment of late-filed priority claims should be construed in favor of allowing the payment of such claims.

8. The priority tax claims of the IRS must be allowed and paid even though they were filed after the January 13, 1995 bar date in this case, i.e., on March 22, 1995. In particular, the Court finds that the Ninth Circuit's recent decision in *Pacific Atlantic Trading Co.*, is applicable to this case. There, the Ninth Circuit held that 11 U.S.C. §§ 501 and 502 preclude the disallowance of priority claims merely because they are late-filed. The court in *Pacific Atlantic* noted that 11 U.S.C. § 502(a) provides that the court "shall allow" a claim in the amount determined, unless one of the 8 enumerated exceptions applies. None of the listed exceptions applied in *Pacific Atlantic* (or in the instant case). Moreover, the *Pacific Atlantic* court reasoned that Section 502 does not contain any language which could possibly be construed as establishing a rule that a claim may be disallowed solely because it is not timely filed. Rather, the statute provides just the opposite; i.e., it *requires* the court to *allow* the claim unless one of the stated exceptions applies. *See In re Pacific Atlantic Trading Co., supra*, 33 F.3d at 1066; *In re Hausladen*, 146 B.R. 557, 560 (Bankr. D.Minn.1992).

■ The court in *Pacific Atlantic* also determined that Bankruptcy Rule 3002 [1] must be construed in a manner that does not contradict the express language of 11 U.S.C. §§ 501 and 502. In that regard, 28 U.S.C. § 2075 (the Rules Enabling Act), which implements the Bankruptcy Rules, provides that "[s]uch rules shall not abridge, enlarge, or modify any substantive right." "As a result, any conflict between the Bankruptcy Code and the Bankruptcy Rules must be settled in favor of the Code. * * * Thus, if the IRS's claim is 'allowed' according to the Code, Rule 3002(c) cannot 'disallow' it." *In re Pacific Atlantic Trading Co., supra*, 33 F.3d at 1066 (citation omitted).

■ The applicability of *Pacific Atlantic Trading Co.* has been prospectively altered by the Bankruptcy Reform Act of 1994 ("Act"). Newly created Section 502(b)(9) specifically provides that a claim may be disallowed if proof of such claim is not timely filed. Section 502(b)(9), however, applies only to cases filed *after October 22, 1994*, the effective date of the Act. Since the petition herein was filed on July 21, 1994, the Ninth Circuit's decision in *Pacific Atlantic* is binding on this Court. *See e.g., In re Beltran*, 177 B.R. 905, 907 (9th Cir. BAP 1995).

Neither the parties' nor the Court's research has revealed any case which has addressed whether the primary holding of *Pacific Atlantic* applies to Chapter 11 cases, i.e., that priority tax claims cannot be disallowed merely because they are untimely filed. However, in *In re Beltran, supra*, 177 B.R. at 907, the BAP recently held that the reasoning of the Ninth Circuit in *Pacific Atlantic* is germane to Chapter 13 cases. The *Beltran* court properly focused on the reliance of the court in *Pacific Atlantic* on the interpretation of the plain language of Sections 501 and 502, and the inconsistency between those statutes and Bankruptcy Rule 3002.[2] Since the Bankruptcy Code makes no distinction between the applicability of Sec-

---

**1.** Bankruptcy Rule 3002 provides that an unsecured creditor in a Chapter 7 case must file a proof of claim within 90 days after the first date set for the meeting of creditors in order for its claim to be allowed. Bankruptcy Rules 3003(c)(2) and (3) contain similar provisions regarding the filing of proofs of claim by creditors in Chapter 11 cases whose claims are scheduled as disputed, contingent, or unliquidated.

**2.** Bankruptcy Rule 3003 is the analogous rule applicable in Chapter 11 cases.

tions 501 and 502 to Chapter 7, Chapter 11, and Chapter 13 cases, the rationale of *Pacific Atlantic* applies with equal force to Chapter 11 cases. An additional basis for finding that *Pacific Atlantic* is applicable here is that this case involves a Chapter 11 liquidating plan of reorganization, which is analogous to a Chapter 7 case.

**IT IS SO ORDERED.**