In re The BENNETT FUNDING GROUP, INC., Debtors.

Richard C. Breeden, Trustee of The Bennett Funding Group, Inc., et al., Plaintiff,

v.

Patrick R. Bennett, Edmund T. Bennett, Kathleen M. Bennett, Michael A. Bennett, Gwen Bennett, Bennett Financial Associates, Bennett Funding of New York, Kenneth P. Kasarjian, Kenton Group, Inc., Charles Genovese, Hemlock Investor Associates, High Mountain Associates, Highwood Investor Associates, Mutual Investors Funding Corporation, Comfort Financial Associates, Comfort Associates, Inc., Olympus Property Management Corporation, Allegro Property & Finance, Inc., Joseph J. Canino, John Does 1–100, M.A. Bennett Associates, Ltd., Hotel Syracuse, Inc., Mahoney Cohen & Company, P.C., Defendants.

Bankruptcy No. 96–61376.
Adversary No. 96–70154.

United States Bankruptcy Court,
N.D. New York.

May 2, 2007.

Simpson, Thacher & Bartlett LLP (James G. Gamble, Esq., of Counsel), New York, NY, for § 1104 Trustee.

Patrick R. Bennett, Loretto, PA, Pro Se Defendant.

Amy Quandt, Esq., Trial Attorney, Office of U.S. Trustee, Utica, NY.

Wasserman, Jurista & Stolz, P.C. (Michael Mc Laughlin, Esq., of Counsel), Millburn, NJ, for Official Committee of Unsecured Creditors.

## MEMORANDUM–DECISION, FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER

STEPHEN D. GERLING, Chief Judge.

Before the Court are two motions addressed to the Answer and Counterclaims ("Answer" or "Answer and Counterclaims") filed by Patrick Bennett ("Bennett") to the August 29, 1996 Amended Complaint ("Complaint") filed herein by Richard C. Breeden, Trustee ("Trustee") in the within adversary proceeding.

The Answer, filed on March 23, 2006, contains seven counterclaims ("Counterclaims") against several counterclaim defendants ("Counterdefendants")[1] and a third party complaint ("Third Party Complaint")[2]

Bennett was able to file a timely Answer in 2006 to the 1996 Complaint because the Trustee did not seek or obtain relief from the automatic stay in Bennett's personal Chapter 7 case in order to continue with the Adversary Proceeding until April 2006.[3] This stay relief was obtained in order to "allow the BFG Trustee to pursue final judgment" in the subject Adversary Proceeding "for the limited purpose of establishing a claim against [Bennett] on behalf of the substantively consolidated [BFG] Estate." *See* Order Granting Trustee's Motion for Modification of the Automatic Stay, *In re Bennett,* Case No. 97–65399, April 3, 2006.

The first motion, the Trustee's Motion to Dismiss Bennett's Counterclaims ("Trustee's Motion to Dismiss"), was filed on April 13, 2006, and seeks to dismiss Bennett's Counterclaims for failure to state a claim on which relief can be granted, pursuant to Federal Rule of Civil Procedure ("Fed.R.Civ.P." or "Rule") 12(b)(6).[4]

The second motion is Counterdefendant Wasserman, Jurista & Stolz, P.C.'s ("Wasserman") motion to dismiss the Counterclaims and the Third Party Complaint for failure to state a claim on which relief can be granted, pursuant to Fed.R.Civ.P. 12(b)(6), or, in the alternative, for summary judgment pursuant to Fed.R.Civ.P. 56.

1. Those Counterdefendants are: Richard C. Breeden as Trustee and individually, Richard C. Breeden and Co., Simpson, Thacher and Bartlett, LLP, Wasserman, Jurista and Stolz, P.C., Zolfo, Cooper, LLC, Coopers and Lybrand LLP, Paul B. Szlosek, Stewart L. Weisman, Comfort Associates, Inc., Cardigan Acquisition Corp., Cendant Corporation, and Equivest Finance, Inc. *See Answer and Counterclaims,* ¶¶ 174 to 185.

2. Bennett's Answer and Counterclaims were amended by an Amendment Pursuant to Federal Rule of Bankruptcy Procedure ("Fed.R.Bankr.P.") 7015 [to Bennett's Answer and Counterclaims], submitted on August 28, 2006 ("First Amended Answer and Counter-

claims"). It was amended again by Bennett's Second Amended Answer and Counterclaims, submitted on October 13, 2006 ("Second Amended Answer and Counterclaims").

3. Bennett filed a Chapter 7 petition in this district on September 5, 1997. Through a series of Stipulations and Orders, the Trustee had continued to extend Bennett's time to answer the Amended Complaint prior to September 5, 1997.

4. The Counterdefendants who filed this motion are: Richard C. Breeden as Trustee, Richard C. Breeden individually, Richard C. Breeden and Co., and Simpson, Thacher and Bartlett, LLP.

The Court first heard oral argument on both these motions at its motion term on July 27, 2006, in Binghamton, New York. The Court then adjourned the motions until the August 31, 2006 calender so that it could reflect on the papers submitted. The Court heard further oral argument on both these motions at its motion term on August 31, 2006, in Binghamton, New York. Upon the conclusion of that hearing, the Court allowed Bennett additional time to submit a Second Amended Answer and Counterclaims in order to address the Court's concerns as to specific dates of allegations, related to statute of limitations issues. Bennett filed his Second Amended Answer and Counterclaims on October 13, 2006. The same motions were then heard again at the Court's motion term on October 31, 2006, in Binghamton, New York.[5] At the time of the hearing, the Court indicated that it would allow the parties an additional two weeks to file further Memoranda of Law, but it did not direct them to do so. Because none of the parties elected to file any further papers, the court deems the motion submitted for decision on October 31, 2006.

## JURISDICTION

■ This court has the power to determine whether a proceeding is core. *See In re Bennett Funding Group, Inc.*, 258 B.R. 67, 76 (Bankr.N.D.N.Y.2000) (holding that "[p]ursuant to 28 U.S.C. § 157(b)(3) it is within the province of the bankruptcy court to determine whether a matter is core or non-core."). *See* further analysis of the jurisdiction issue in Discussion section, *infra.*

## FACTS

On July 6, 1996, the Trustee commenced this adversary proceeding by filing a complaint in The Bennett Funding Group Inc.'s case[6] against numerous defendants, including Bennett personally.[7] This complaint was amended on August 29, 1996, and it was in response to this amended complaint ("Complaint") that Bennett filed his Answer and Counterclaims. The Complaint contains allegations relating to what this Court has previously characterized as a "financial superweb" of dealings involving entities owned and/or controlled by the Bennett family, including Bennett. The Complaint contains forty-three counts in which the Trustee alleges, *inter alia,* actual and constructive fraud, unreasonably small capital, breach of fiduciary duty, negligence, turnover, and constructive trust.

Since the filing of the Trustee's Complaint, Bennett was prosecuted and tried on criminal charges in the U.S. District Court for the Southern District of New York. Bennett was convicted on seven counts of perjury and obstruction on March 2, 1999. At a second trial, ending on June 10, 1999, Bennett was convicted of forty-two felony counts of securities fraud, bank fraud, money laundering and transacting business with unlawfully obtained property. *See* Trustee's Statement of Uncontested Facts, ¶¶ 16, 23.[8] The jury also

---

5. Bennett is presently incarcerated at the Federal Correctional Institution, Loretto, Pa., and participated telephonically in the oral arguments during each of these three motion dates.

6. On March 29, 1996, The Bennett Funding Group, Inc. ("BFG"), Bennett Receivables Corp. ("BRC"), Bennett Receivables Corp. II ("BRC II") and Bennett Management and Development Corp. ("BMDC") (collectively "BFG" or "Debtors") filed petitions for reorganization.

7. On August 29, 1996, the Trustee filed the Amended Complaint which is referred to above and is the subject of these two motions.

8. *See also Bennett v. United States,* 2006 WL 738162 *1, 2006 U.S. Dist. Lexis 12395 *3 (S.D.N.Y.2006).

returned a forfeiture verdict against Bennett in the amount of $109,088,889.11.[9]

Bennett filed his Answer and Counterclaims on March 23, 2006. The Trustee filed his Motion to Dismiss on April 13, 2006. Bennett then filed his Reply in Opposition to Defendants' Motion to Dismiss ("Bennett's Reply Motion") on July 18, 2006, to which the Trustee responded on July 24, 2006, with his Reply Memorandum of Law in Support of Defendants' Motion to Dismiss ("Trustee's Reply Memorandum of Law"). On August 28, 2006, Bennett filed his First Amended Answer and Counterclaims, with a supporting Memorandum of Law which, *inter alia*, expanded upon the alleged predicate acts set out in Bennett's Answer and Counterclaims.

As mentioned *supra*, the Court heard oral argument from the Trustee, Bennett, the Official Committee of Unsecured Creditors and the United States Trustee at its motion terms on July 27, August 31, and October 31, 2006 in Binghamton, New York.

On September 27, 2006, the Court issued an Order Requiring Defendant/Counterclaim Plaintiff Bennett to Amend his Counterclaims to Provide Greater Specificity. This Order required Bennett to provide more detail as to dates when the wrongful acts or misstatements alleged in his Answer and Counterclaims were made or took place, as well as greater particularity regarding these acts and misstatements alleged to have been made by the various Counterdefendants.

On October 13, 2006, Bennett filed his Second Amended Answer and Counterclaims, also supported by a Memorandum of Law, which, *inter alia*, withdrew Counterclaims 1,2,4,5, and 7, leaving only Counterclaims 3 and 6. The Second Amended Answer also added Simpson Thacher as a Counterdefendant on Counterclaim 3, and alleged a new RICO "injury" as a result of the Trustee lifting the stay in Bennett's personal Chapter 7 case in April 2006 in order to pursue the subject adversary proceeding against Bennett. *See* Second Amended Answer and Counterclaims, ¶ AA 62.

On March 14, 2007, this Court granted partial summary judgment to the Trustee on Count XI of the Complaint, denied partial summary judgment to the Trustee on Count XXVII and submitted proposed findings of fact and recommendations to the District Court that partial summary judgment be granted to the Trustee on Count XXIX of the Complaint. In that same Decision, the Court also denied Bennett's motion to dismiss Counts I through IV and VI through XXVIII of the Complaint, and submitted proposed findings of fact and recommendations to the District Court that Bennett's motion to dismiss Counts V and XXIX through XLIII of the Complaint also be denied.

## ARGUMENT

### *Bennett's Answer and Counterclaims* [10]

As stated above, only Counterclaims 3 and 6 remain of the original seven Coun-

---

9. Bennett was sentenced to thirty years imprisonment, followed by three years supervised release. This sentence was later vacated by the Second Circuit Court of Appeals, however, and remanded to the District Court for re-sentencing. *See United States v. Bennett,* 252 F.3d 559 (2d Cir.2001). Bennett ultimately received a twenty-two year prison sentence, which was subsequently affirmed by

the Second Circuit. *See United States v. Bennett,* No.02–1379, 2003 U.S.App. LEXIS 19394 (2d Cir. Sept. 18, 2003).

10. As the subject of this Decision is the Trustee's and other Third Party Counterdefendants' motions to dismiss Counterclaim Plaintiff Bennett's Counterclaims against them,

terclaims. Each Counterclaim purports to arise from acts alleged to have occurred after the filing of the BFG bankruptcy petition.

### Counterclaim 3

Counterclaim 3 alleges that the Trustee breached his fiduciary duty[11] to BFG by:

1) violating 18 U.S.C. §§ 152, 153, 154 and 645,

2) conducting an improper personal relationship with a former BFG employee,

3) fraudulently receiving property from the estate through his improper personal relationship with that former employee,

4) conducting the BFG estate as a RICO enterprise,[12]

5) conducting a scheme to close down BFG rather than reorganizing the company, and

6) liquidating BFG assets, including Equivest, Inc., at below market values.[13]

Bennett seeks $550 million in damages in this Counterclaim.

The six allegations which comprise this Counterclaim are, according to Bennett, based on the information contained in ¶¶ 63 to 188 of the Answer and Counterclaims. These one hundred twenty five paragraphs, spread over thirty-three pages, contain a rambling, discursive, sometimes irrelevant and often unsupported concatenation of alleged breaches of fiduciary duty committed by the Trustee and other co-conspirators.[14]

Because this Counterclaim arises from alleged conduct by the Trustee after the date of BFG's bankruptcy petition, this Decision will not address allegations contained in Bennett's Answer and Counterclaims which involve acts which took place before the filing of BFG's petition.[15] Also, those paragraphs alleging that evidence

---

Bennett's Answer to the Trustee's Complaint will not be addressed here.

11. In his Second Amended Answer, Bennett sought to add Simpson Thacher as an additional Counterdefendant on Counterclaim 3, for aiding and abetting the Trustee's Breach of Fiduciary Duty, "which is also an independent breach of their own fiduciary duty as a professional in the [BFG] bankruptcy case." *See* Second Amended Answer, ¶¶ AA45 to AA49. However, Fed.R.Civ.P. 21 states that "[p]arties may be dropped or added by order of the court on motion of any party or of its own initiative at any stage of the action ..." *Id.* There was no order of this Court adding Simpson Thacher as a counterdefendant to Counterclaim 3. This Decision will proceed, however, as though Simpson Thacher had been properly added as a Counterclaim 3 counterdefendant.

12. Although it is this allegation which forms the heart of Counterclaim 6, Bennett also includes it as an alleged instance of the Trustee's breach of fiduciary duty to the BFG estate.

13. Bennett also lists a separate allegation that the Trustee filed false oaths and declarations in his submissions to this Court; but as that allegation is the same as a violation of 18 U.S.C. § 152, it has been omitted from this list of allegations.

14. One example of the type of allegations contained in these paragraphs: under the heading of "Specific Examples of the [Trustee] Conspiracy," Bennett alleges that after being appointed pursuant to § 1104 of the United States Bankruptcy Code, 11 U.S.C. §§ 101–1330 ("Code"), the Trustee replaced BFG's "sophisticated cash receipt system" with a lock box account. According to the pleading this was a "reckless act" which "resulted in actual harm and loss to Bennett, [BFG] and its creditors ..." *See* Answer and Counterclaims, ¶¶ 108–111.

15. Answer and Counterclaims, ¶¶ 66, 68–69, 71, 82–85 and 102.

put before the juries in Bennett's two criminal trials (verdicts which have been appealed to the U.S. Second Circuit Court of Appeals) was false and misleading will not be addressed, for obvious reasons.[16] Likewise, paragraphs involving the criminal trial verdicts themselves [17] will not be addressed. Nor will ¶ 151, which alleges that the Securities and Exchange Commission's ("S.E.C.") Director of Enforcement succeeded in improperly influencing the verdict in Bennett's second criminal trial and those paragraphs which allege that the S.E.C. itself is run as a corrupt and quasi-criminal enterprise will, of necessity, also be ignored.[18]

Of what remains, the Court reads the allegations in Counterclaim 3 to be supported as follows:

1) *Violations of 18 U.S.C. §§ 152, 153, 154 and 645.*

18 U.S.C. § 152 prohibits a person from making a "false oath or account in or in relation to any case under title 11;" from making "a false declaration in or in relation to any case under title 11;" or from falsifying any recorded information relating to the financial affairs of a debtor.

Bennett alleges that from the time of his application to the office of the U.S. Trustee, and in subsequent submissions to the Court, including the Disclosure Statement and Plan, the Trustee knowingly made false oaths and declarations in violation of § 152. More specifically, Bennett alleges that the Trustee and other co-conspirators, in a series of affidavits dated December 12, 1997, "falsely portrayed the Bennett companies as a 'Ponzi scheme'" and "insolvent." *See* Answer and Counterclaims, ¶¶ 121, 125. Bennett also alleges that these affidavits overstated the amount of

money BFG had raised from 1990 to 1995, and understated BFG assets. *See id.* at ¶ 123. Bennett alleges that the submission of the May 28, 2002 BFG Chapter 11 Plan ("Plan") and June 17, 2002 Disclosure Statement ("Disclosure Statement") also constituted breaches of fiduciary duty because they contained materially false and misleading information. *See* First Amended Answer and Counterclaims, ¶¶ A6–A8; Second Amended Answer and Counterclaims, ¶ AA54. Although in his First Amended Answer and Counterclaims Bennett does not detail which information in the Plan and Disclosure Statement is misleading, it is presumably the same information detailed in ¶¶ 121,123 and 125 of Bennett's Answer and Counterclaims. Bennett also alleges that on July 27, 2006, both the Trustee and Simpson Thacher represented to this Court that all their submissions to the Court had been accurate and true, which itself was untrue and, therefore, a violation of 18 U.S.C. § 152. *See* Amended Answer and Counterclaims, ¶ A11. Bennett also alleges that the Trustee's May 30, 2002 affidavit in support of the Plan is likewise a breach of fiduciary duty because it includes the same misleading information. *See* Second Amended Answer and Counterclaims, ¶ AA58.

18 U.S.C. § 153 addresses embezzlement against the estate, and targets a person who "knowingly and fraudulently appropriates . . ., embezzles, spends, or transfers any property or secretes or destroys any document belonging to the estate of a debtor . . ." Although Bennett alleges violations of 18 U.S.C. § 153, the Court was unable to find within his pleadings any specific allegations of embezzlement by the Trustee.

---

**16.** *Id.,* ¶¶ 127–143, 155–156 and 158.

**17.** *Id.,* ¶¶ 151 and 161–167.

**18.** *Id.,* ¶¶ 78, 80–81 and 85.

18 U.S.C. § 154 targets a trustee who "knowingly purchases ... any property of the estate ..." or who "refuses to permit a reasonable opportunity for inspection by parties in interest of the documents and accounts relating to the affairs of estate's in the person's charge when directed by the court to do so." Although Counterclaim 3 generally alleges violations of 18 U.S.C. § 154, the Court was unable to locate, within Bennett's pleadings, any specific allegations that the Trustee "knowingly purchas[ed] ... any property of the estate ... or refus[ed] to permit ... the inspection by parties in interest of the documents and accounts relating to the affairs of estates ... when directed by the court to do so."

Finally, 18 U.S.C. § 645 states that a trustee who "retains or converts to his own use or to the use of another or after demand by the party entitled thereto, unlawfully retains any money coming into his hands by virtue of his official relation, position or employment, is guilty of embezzlement ..." The Court was unable to locate within Bennett's pleadings any specific allegations that the Trustee "retain[ed] or convert[ed] to his own use or to the use of another, or after demand by the party entitled thereto, unlawfully retain[ed] any money coming into his hands by virtue of his official relation, position or employment ..."

### 2) *Conducting an Improper Personal Relationship with a former BFG employee.*

Bennett alleges that the Trustee "conduct[ed] an improper personal relationship with a female BFG employee that resulted in both actual and future harm to Bennett, [BFG] and its creditors." *See* Answer and Counterclaims, ¶ 99; First Amended Answer and Counterclaims, ¶ A29; Second Amended Answer and Counterclaims,

¶ AA50. He also alleges that the Trustee "conducted an improper personal relationship with a female BFG employee 'on BFG time' in violation of his fiduciary responsibilities to the BFG estate, and in further violation of 18 U.S.C. §§ 152, 153, 154 and 645, resulting in illegal waste and improper use of BFG estate assets ..." *See* First Amended Answer and Counterclaims, ¶ A29.

By way of support for these allegations, Bennett offers "[t]he March, 2002 rehiring of [the former BFG employee] at an unjustified pay rate based on [the Trustee's] improper personal relationship with [the former employee] developed on BFG time and at BFG expense;" "[p]ay raises, bonuses, stock grants and[/]or other forms of compensation awarded to [the former employee] while employed at Equivest, Inc. after March 17, 2000." *See* Second Amended Answer and Counterclaims, ¶¶ AA50, AA51.

### 3) *Receiving Property from the Estate Through Trustee's Improper Personal Relationship with the Former BFG Employee.*

Although this allegation is made generally in Counterclaim 3, no information is provided which would support the allegation that the Trustee received property from the estate through his relationship with the former employee.

### 4) *Conducting the BFG estate as a RICO enterprise.*

As this is the sum and substance of Counterclaim 6, it will be treated in this Decision's discussion of that Counterclaim, *infra.*

### 5) *Conducting a Scheme to Close BFG Rather Than Reorganizing BFG.*

Bennett alleges that the Trustee breached his fiduciary duty to the estate by

"willfully conducting a scheme to close down [BFG] rather than, as mandated by law, reorganizing [BFG]." *See* Second Amended Answer and Counterclaims, ¶ AA48. Bennett argues that "this scheme was carried out through the submission of materially false and misleading information to this Court, [BFG] creditors and the U.S. Trustee's office ..." *Id.* Bennett argues that the Trustee was "required by law [to] attempt early on to convert the case to a Chapter 7 ..." but did not do so because if this were to have occurred, the Trustee and his law firm would have been replaced, and missed out on "tens of millions" in fees they each received. *See* Second Amended Answer and Counterclaims, ¶ AA49.

### 6) *Liquidating BFG Assets at Below Market Values.*

In his Second Amended Answer and Counterclaims, Bennett alleges that the sale of so-called "non-core" BFG assets, as described in the Disclosure Statement, resulted in the estate receiving less than market value for those assets, including Equivest, Inc. *See* Second Amended Answer and Counterclaims, ¶ AA 52.

### *Counterclaim 6*

Counterclaim 6 alleges that the Trustee and all other Counterdefendants violated 18 U.S.C. § 1962(c) by conducting the BFG estate as a RICO enterprise.[19] That section of the statute states that

[i]t shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such en-

terprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

18 U.S.C. § 1962(c).

Bennett cites the proper standard to allege a civil RICO violation: that a person must have engaged in (1) conduct, (2) of an enterprise, (3) through a pattern (4) of racketeering activity, in violation of 18 U.S.C. § 1962(c). *See, e.g., Evercrete Corp. v. H–Cap Ltd.,* 429 F.Supp.2d 612, 622 (S.D.N.Y.2006).

### *Racketeering Activity*

Bennett alleges that the Trustee and the other Counterdefendants committed racketeering acts including mail fraud, wire fraud, violations of 18 U.S.C. § 1503 (Influencing or Injuring Officer or Juror Generally), 18 U.S.C. § 1510 (Obstruction of Criminal Investigations) and violations of 18 U.S.C. §§ 152, 153, 154 and 645.[20]

### *Mail Fraud*

Bennett alleges that the Trustee and the Counterdefendants committed mail fraud, violating 18 U.S.C. § 1341, by mailing a series of letters to BFG investors from 1996 to 2002 which misrepresented the value of BFG assets and referred to BFG as a Ponzi scheme. *See* Answer and Counterclaims, ¶¶ 99, 119. He also alleges that on each occasion that the Trustee or other case professionals applied for and received fees in the BFG case, they committed mail and wire fraud. *See* Answer and Counterclaims, ¶ 120. Bennett also alleges that the December 12, 1997 affidavits executed by the Trustee "and four BFG staff co-conspirators" were not only filed with the Court, but "sent to various parties through

---

**19.** 18 U.S.C. § 1964(c) authorizes a private cause of action for "any person injured in his business or property by reason of a violation of Section 1962." *See Reisner v. Stoller,* 51 F.Supp.2d 430, 449 (S.D.N.Y.1999).

**20.** For an outline of Bennett's allegations of the Trustee's violations of 18 U.S.C. §§ 152, 153, 154 and 645, see pgs. 311–12, *supra.*

the U.S. mails ..." thus also constituting mail fraud. *See* Answer and Counterclaims, ¶ 125.

Bennett even alleges that this entire Adversary Proceeding (No. 96–70154A) "was developed and hatched by defendants [Trustee and Simpson Thacher] ... as an independent predicate act of mail fraud ..." *See* Second Amended Answer and Counterclaims, ¶ AA63.

### Wire Fraud

Aside from Bennett's allegation that on each occasion that the Trustee or other case professional applied for and received fees in the BFG case they committed wire fraud (*see* Answer and Counterclaims, ¶ 120),[21] and his general allegation of wire fraud in Counterclaim 6, Bennett's pleadings offer no instances of alleged wire fraud on the part of any Counterdefendant.

### Violations of 18 U.S.C. § 1503 (Influencing or Injuring Officer or Juror Generally), and 18 U.S.C. § 1510 (Obstruction of Criminal Investigations)

A thorough vetting of Bennett's Answer and Counterclaims, and the two amendments thereto, reveals no facts supporting the general allegations of any Counterdefendants' violation of either of these two sections of Title 18 of the U.S.Code.

### Pattern

Bennett argues that the allegations set out in the preceding paragraphs meet the requirement of a pattern of racketeering activity as defined in 18 U.S.C. § 1961(5). That section defines racketeering activity as requiring

at least two acts of racketeering activity, one of which occurred after the effective date of this chapter [October 15, 1970] and the last of which occurred within ten years (excluding any period of imprisonment) after the commission of a prior act of racketeering activity.

18 U.S.C. § 1961(5).

### RICO Enterprise

Bennett argues that the Trustee transformed the BFG estate into a RICO enterprise. *See* Answer and Counterclaims, ¶ 64. Bennett cites *First Capital Asset Management v. Satinwood Inc.*, 385 F.3d 159, 173 (2d Cir.2004) for the proposition that "any legal entity may qualify as a RICO enterprise." *See* Memorandum of Law accompanying First Amended Answer and Counterclaims, pgs. 8–9. Bennett cites the same case on the issue of whether a bankruptcy estate may be a RICO enterprise. The *First Capital Asset Management* court held that "under certain circumstances, a bankruptcy estate may qualify as a RICO enterprise." 385 F.3d at 175.

### New and Independent Injury

Bennett also alleges that he has suffered "new and independent" injuries which implicate the Second Circuit's "separate accrual rule." *See* Memorandum of Law Supporting Bennett's Second Amended Answer and Counterclaims, p. 17. These injuries, Bennett alleges, are separate from the loss of his equity value in BFG. They result from additional legal expenses, loss of pension benefits, loss of a New York State tax case, losses from the execu-

---

**21.** Bennett makes no attempt to link the alleged behavior to the language contained in the federal wire fraud statute, which reads, in relevant part:

Whoever, having devised or intending to devise any scheme or artifice to defraud ... transmits or causes to be transmitted by means of wire, radio, or television communication ... any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than 20 years, or both.

18 U.S.C. § 1343.

tion of a judgment against Bennett by Choice Hotels, and from the Trustee's reactivation of this Adversary Proceeding against Bennett in March 2006. *See* Second Amended Answer and Counterclaims, ¶¶ AA43, AA44, and AA62. Bennett contends that the provable future damages resulting from these injuries are not yet ripe because the actual injury is not yet determinable.

### Conversion from Motion to Dismiss to Motion for Summary Judgment

In his July 18, 2006 Reply Motion, Bennett requests that the Trustee's and Wasserman's motions to dismiss be converted to summary judgment motions because the Counterdefendants' motions "relied on numerous items of non-complaint evidence [extrinsic to the pleadings]." *See* Bennett's Reply Motion, p. 5.

### Rules Enabling Act

Bennett argues that 28 U.S.C. § 2072 ("Rules Enabling Act" or "REA") essentially "trumps" the Plan Releases contained in the BFG Plan and this Court's Confirmation Order. He contends that the REA dictates that when there is a conflict, as there is here, between a federal rule such as Fed.R.Bankr.P. 7013 and "the discretionary provision of [11 U.S.C. § ] 1123 including the confirmation plan, the release", the rule controls and the statute, here § 1123 and by extension the Plan Releases, must yield. Bennett contends that his Counterclaims are timely filed pursuant to Fed.R.Civ.P. 13 (made applicable by Fed.R.Bankr.P. 7013), because those Counterclaims accompanied a timely response to the proceeding against him. As a result, Bennett argues that the Plan Releases do not preclude him from maintaining his Counterclaims. *See* Transcript of July 27, 2007 Hearing, p. 35.

### Statute of Limitations

Bennett also makes an argument that the automatic stay in his September 5, 1997 personal Chapter 7 case prevented him from filing his Counterclaims earlier, effectively tolling the statutes of limitation on both Counterclaims. As a result, Bennett contends that the limitations clock did not start running again until April 3, 2006, when the Trustee obtained relief from the stay in Bennett's personal Chapter 7 case.

### Trustee's Motion to Dismiss Bennett's Counterclaims

#### Generally

The Trustee first argues that in order to give credence to Counterclaims 3 and 6, the Court would, of necessity, have to accept as fact that the U.S. Department of Justice "was complicit in the scheme to destroy [BFG,] and conducted two federal criminal trials just to put [Bennett] in prison based on false evidence and perjury . . ." *See* Memorandum of Law in Support of Trustee Motion to Dismiss ("Trustee Memorandum of Law"), p. 7. The Trustee also contends that the U.S. District Court of the Southern District of New York, the jury that convicted Bennett, and the U.S. Court of Appeals for the Second Circuit would all have to have been either complicit in this scheme, or not sophisticated enough to have recognized it; that this very Court approved the appointment of a Trustee who secured the position by fraud and deception; and, that members of the Creditors' Committee were, and remain, unable to discern the massive conspiracy which caused creditors to lose millions of dollars. *See id.*, at 7–8.

The Trustee also cites several cases for the proposition that where a complaint, like Bennett's Counterclaim, cannot be meaningfully distinguished from bold conclusions, sharp harangues and personal comments, or if it is incoherent, rambling and delusional, it should be dismissed. The Trustee states that this is especially so where a counterclaimant, like Bennett,

is seeking to proceed *in forma pauperis.* This is because Congress and the courts recognize that *in forma pauperis* litigants are not subject to the same discipline imposed by the costs of litigation and the risk of financial sanctions to which ordinary litigants are subject. The Trustee also asserts that pursuant to 28 U.S.C. § 1915(e)(2)(B), a court is required to dismiss an *in forma pauperis* complaint or Counterclaim if it is frivolous, malicious or meritless. He contends that given the U.S. Supreme Court's characterization of frivolous complaints as including those "describing fantastic or delusional scenarios ..." (*Denton v. Hernandez,* 504 U.S. 25, 32, 112 S.Ct. 1728, 118 L.Ed.2d 340 (1992)), Bennett's Counterclaims should be dismissed.

### Barred by Plan Releases

The Trustee next argues that Bennett's Counterclaims should be barred because the Trustee was released from liability by the release provisions ("Plan Releases") contained in the Plan and this Court's Confirmation Order of June 17, 2002 ("Confirmation Order"). Those Plan Releases gave all parties, including Bennett, 60 days from the date of Confirmation to file with the Court a statement of any claim or cause of action against the Trustee, "or forever be barred from asserting such claims or causes of action arising on or before such date." *See* Confirmation Order, p. 9. Because Bennett did not file any claims or causes of action within that 60 day period, the Trustee argues that he is precluded from doing so now. The Trustee contends that by asserting these Counterclaims, Bennett is violating the Court's Confirmation Order, which specifi-

cally approved and incorporated the Plan Releases regarding the Trustee. As a result, Bennett's Counterclaims should be dismissed.

### Statute of Limitations

The Trustee contends that Bennett's own pleadings assert that the Trustee's alleged fraudulent scheme began prior to March 29, 1996, and that Bennett saw through this purported scheme from the start. *See* Trustee Memorandum of Law, p. 12 (citing Answer and Counterclaims, ¶¶ 66, 70, and 92.) As a result, the Trustee asserts that the respective Statutes of Limitations began accruing at that time. For Counterclaim 3, the Trustee notes that the Statute of Limitations for Breach of Fiduciary Duty sounding in fraud is six years pursuant to New York Civil Practice Law and Rules ("NYCPLR") § 213(8). Here the Trustee notes the lack of specific dates attaching to the vast majority of the fraud allegations contained in Counterclaim 3, and this Court's affording Bennett, at the August 31, 2006 hearing, the opportunity to submit yet another amended pleading in order to supply these dates so that the respective Statutes of Limitations issues could be addressed.[22] At the October 31st hearing, the Trustee argued that Bennett's subsequent submission of October 13, 2006 did not provide the dates required to make these determinations, thus, did not comply with the Court's Order, and that the Counterclaim should be dismissed.

### Counterclaim 6

### Lack of Standing

The Trustee contends that Bennett lacks standing to bring a RICO claim because he

---

**22.** The Court's Order of September 26, 2006, *inter alia,* directed Bennett to "amend the Counterclaims on or prior to October 13, 2006 to provide greater specificity as to the dates on which various allegedly wrongful acts occurred or alleged misstatements were made and to provide greater particularity as

to the specific alleged acts and misstatements and specific causes of action that are alleged against each Counterclaim defendant ..." Order Requiring Defendant/Counterclaim Plaintiff Bennett to Amend Counterclaim to Provide Greater Specificity, September 26, 2006.

has not been "injured" as required in the RICO statute.[23] The Trustee asserts that Bennett's purported damages fall under two categories: those arising from his criminal conviction, and those resulting from the winding down of the BFG estate. *See* Answer and Counterclaims, ¶¶ 166 and 99, respectively. Those damages arising from his criminal conviction cannot serve as a § 1964(c) injury because they do not represent harm to business or property and because Bennett cannot seek to recover damages resulting from his own conduct. As for those damages ensuing from the winding down of the BFG estate, the Trustee argues that they cannot serve as a § 1964(c) injury because any purported harm is to BFG, not Bennett, and as a result is too indirect and remote to merit recovery. According to the Trustee, any derivative RICO claim would belong to the Chapter 11 estate, not to Bennett.

### No RICO Violation Adequately Alleged

The Trustee makes several arguments supporting the assertion that Bennett has not adequately alleged a RICO violation. The most compelling of these, however, is that a RICO claimant is required to show that the violation committed by the RICO defendant was not only the "but for" cause of his injuries, but also the "proximate cause." *See Anza v. Ideal Steel Supply Corp.,* —— U.S. ——, ——, 126 S.Ct. 1991, 1994, 164 L.Ed.2d 720 (2006) (holding that "a plaintiff may sue under § 1964(c) only if the alleged RICO violation was the proximate cause of the plaintiff's injury."). The Supreme Court has noted that proximate cause reflects "a demand for some direct relation between the injury asserted and the injurious conduct alleged." *Holmes v. Securities Investor Protection Corp.,* 503

U.S. 258, 112 S.Ct. 1311, 1318, 117 L.Ed.2d 532 (1992). The Trustee argues that because each of the predicate acts alleged by Bennett occurred *after* BFG was in bankruptcy, no alleged act by the Trustee could be the proximate cause of Bennett's injury.

The Trustee also contends that because there are no private rights of action for mail or wire fraud, the alleged violations of those statutes cannot serve as RICO predicate acts.

The Trustee also asserts (but confines to a footnote) the position that RICO claims based on fraud must, pursuant to Rule 9(b) of the Fed.R.Civ.P., be pled with particularity. Although not explicitly argued in the Trustee's papers, the Court infers that the Trustee contends that Bennett's RICO claims are not pled with the particularity required by Fed.R.Civ.P. 9(b).

### RICO Enterprise

The Trustee contends that the RICO statute requires an allegation of an ongoing organization which functions as a continuous unit, and that the enterprise be separate and distinct from the pattern of racketeering activity. The Trustee argues that Bennett has not alleged how the members of the enterprise formed the network, how they worked together and how they operated, all requirements to survive a motion to dismiss. *See* Trustee Memorandum of Law, p. 25 (*citing In re SmithKline Beecham,* 108 F.Supp.2d 84, 95 (D.Conn.1999)).

The Trustee concludes by arguing that because Bennett's Counterclaim 6 fails to successfully allege the existence of a RICO enterprise, his RICO Counterclaim must be dismissed.

**23.** The civil remedy provision of RICO reads, in relevant part, "Any person *injured in his business or property* by reason of a violation of section 1962 [of the RICO statute] may sue therefor in any appropriate United States district court ..." 18 U.S.C. § 1964(c) (emphasis added).

### Conversion from Motion to Dismiss to Motion for Summary Judgment

The Trustee argues in his July 24, 2006 Reply Memorandum of Law that the motion to dismiss the Counterclaims is a proper Rule 12(b)(6) motion, as it relies "only upon documents of which the Court may take judicial notice and documents that are integral to Bennett's counterclaims." *See* Trustee's Reply Memorandum of Law, p. 7.

### Wasserman's Motion to Dismiss Bennett's Counterclaims

The Wasserman firm was retained by the Official Committee of Unsecured Creditors in the BFG case, and this retention was approved by Order of this Court on May 24, 1996.

Bennett alleges that Wasserman has been instrumental in "selling [the] fraudulent story of a pre-petition Ponzi scheme which has allowed [the Trustee] to conduct the affairs of a RICO enterprise that [Wasserman] participated in and profited from ..." *See* Answer and Counterclaims, ¶ 177. In addition, Bennett alleges that Wasserman "conspired in the thousands of acts of mail fraud," and participated in the "wire fraud fee scheme," and helped prepare the "knowingly materially false and misleading 'Plan of Reorganization' which constituted thousands of individual acts of mail fraud through use of the U.S. Mails in interstate commerce." *Id.* Bennett also alleges that Wasserman "further forwarded false information to other creditors in support of [the Trustee] and the various conspiracies being perpetrated by [Wasserman] and the other defendants ... and remains active in the RICO enterprise and conspiracies ... now to protect the fruits of their ill-gotten gains." *Id.*

Although Wasserman is not named as a defendant in Bennett's Counterclaim 3, Bennett does accuse Wasserman of responsibility "for the materially false and misleading statements submitted to this Court in support of its materially false and misleading allegations that the Bennett Companies were a Ponzi scheme and insolvent." *See* First Amended Answer and Counterclaims, ¶ A23.[24] Wasserman is specifically named as a Counterdefendant in Counterclaim 6 in Bennett's Second Amended Answer. *See* Second Amended Answer and Counterclaims, ¶ AA37.

Wasserman makes two arguments. The first is identical to the Trustee's: that the Plan Releases contained in BFG's Chapter 11 Plan of Reorganization explicitly preclude Bennett from bringing any action against it because Bennett failed to file a claim with the Court as required in the Plan Releases, which were approved by and incorporated in the Court's Confirmation Order. Wasserman also contends that each of its actions on behalf of the Creditors' Committee benefitted both the creditors and the estate.

The second argument Wasserman makes is that the limited immunity granted to members of a Creditors' Committee by Code § 1103 also extends to professionals retained by that committee. Wasserman cites *Pan Am Corp. v. Delta Air Lines, Inc.*, 175 B.R. 438, 514 (S.D.N.Y. 1994) for that proposition. Wasserman also contends that each of its actions taken on behalf of the Creditors' Committee in the BFG case were within the scope of the

---

**24.** In his Second Amended Answer, Bennett sought to add the law firm of Simpson Thacher as an additional Counterdefendant on Counterclaim 3, for aiding and abetting the Trustee's Breach of Fiduciary Duty, "which is also an independent breach of their own fiduciary duty as a professional in the [BFG] bankruptcy case." *See* Second Amended Answer, ¶¶ AA45 to AA49. Bennett did not, however, add Wasserman as a Counterdefendant on this Counterclaim.

normal duties and responsibilities of committee counsel, and that almost every allegation made against it by Bennett involved a matter that came before this Court for approval.

### DISCUSSION

■ At the outset, the Court notes that a *pro se* litigant is generally afforded some degree of flexibility in demonstrating the validity of its claim. *See In re Fanelli,* 263 B.R. 50, 58 (Bankr.N.D.N.Y.2001) (citing *Boguslavsky v. Kaplan,* 159 F.3d 715, 719 (2d Cir.1998)). In addition, a *pro se* litigant's complaint and supporting papers may be read liberally so as to raise the strongest arguments suggested therein. *Id.* Moreover, "implicit in the right to self-representation is an obligation on the part of the court to make reasonable allowances to protect *pro se* litigants from inadvertent forfeiture of important rights because of their lack of legal training." *Id.* (citing *Traguth v. Zuck,* 710 F.2d 90, 95 (2d Cir. 1983)). *See also Clain v. International Steel Group,* 2005 WL 273015, 2005 U.S. Dist. Lexis 1531 (S.D.N.Y.2005) (opining that "in such a case as this, in which the plaintiff is a *pro se* litigant, a court must be mindful that the pleadings 'are to be held to less stringent standards than formal pleadings drafted by lawyers.' ")

### Jurisdiction

The Court has core jurisdiction over the parties and subject matter of this adversary proceeding pursuant to 28 U.S.C. §§ 1334, 157(a), (b)(1), and (b)(2)(O).

■ Bennett's Breach of Fiduciary Duty Counterclaim against the Trustee and the law firm of Simpson, Thacher & Bartlett, LLP ("Simpson Thacher"), and the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 *et seq.* ("RICO") Counterclaim against the Trustee and Wasserman, are core proceedings because they are claims "affecting the liquidation of assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship ..." 28 U.S.C. § 157(b)(2)(O).

Bennett's Breach of Fiduciary Duty Counterclaim against the Trustee clearly fits the category of core jurisdiction, as it is a claim which would have no existence outside of the bankruptcy. *See, e.g. Sanders Confectionary Prods. v. Heller Fin., Inc.,* 973 F.2d 474 (6th Cir.1992) (holding that claims against a bankruptcy trustee concerning his administration of the bankruptcy estate are core proceedings).

■ Whether Bennett's RICO Counterclaim against the Trustee and Wasserman is a core proceeding, however, is less obvious. "Relatively few circuit cases ... provide general guidance for determining when a matter that does not readily fit within the enumerated statutory categories is a core proceeding." *Barnett v. Stern,* 909 F.2d 973, 981 (7th Cir.1990). That same court noted that "[f]ew courts have considered whether a RICO claim asserted under circumstances similar to those before us would constitute a core proceeding in bankruptcy. Of the bankruptcy and district courts that have considered similar issues, the weight of authority appears to support classification of such claims as a non-core, related proceeding." *Id.* at 979–980 (collecting cases).

This Court has previously found a RICO cause of action to be non-core:

> Despite the broad construction given to core matters, this [RICO] cause of action must be deemed non-core.... [T]his action cannot be deemed core simply because it may increase the assets of the estate, or because it arises out of the same events as does a core matter. Additionally, this action arose before the filing of the petition in this bankruptcy

and would exist independently outside of the bankruptcy process. It is therefore not a core proceeding.

*Bennett*[25] *v. Genoa Ag Center, Inc.*, 154 B.R. 126, 138 (Bankr.N.D.N.Y.1992) (citations omitted).

What distinguishes this Court's *Genoa Ag Center* case from the matter *sub judice* is that in *Genoa Ag Center* the claim arose pre-petition and in both the cases collected by the *Barnett* court and *Genoa Ag Center*, the Trustee was a RICO plaintiff rather than a RICO defendant.

The extent to which the distinction between events occurring pre and post-petition should bear upon the core, non-core determination was emphasized by the Second Circuit Court of Appeals when it summarized the case law on the core, non-core distinction in *In re United States Lines, Inc.*, 197 F.3d 631 (2d Cir.1999):

> Under *Northern Pipeline Constr. Co. v. Marathon Pipeline[Pipe Line] Co.*, 458 U.S. 50[, 102 S.Ct. 2858, 73 L.Ed.2d 598] (1982), whether a contract proceeding is core depends on (1) whether the contract is antecedent to the reorganization petition; and (2) the degree to which the proceeding is independent of the reorganization.

197 F.3d at 637.

*See also In re Ben Cooper, Inc.*, 896 F.2d 1394, 1400 (2d Cir.1990) (holding that contract claims under state law where the contract was entered into post-petition are

subject to the bankruptcy court's core jurisdiction.)[26]

In a recent case holding that certain RICO claims were in fact non-core, the court examined the RICO claims of plaintiffs creditors' and equity security holders' committees against debtor's investment banks and lenders for assisting debtor's management in looting the company. *See In re Adelphia Communications Corporation Securities and Derivative Litigation*, 2006 WL 337667, 2006 U.S. Dist. Lexis 8700 (S.D.N.Y.2006). The court found that because the RICO claims were "based on *conduct antecedent to the reorganization petition* and [were] independent of the reorganization; and they [were] not unique to or uniquely affected by the bankruptcy proceedings ..." they were not core matters. *Id.* at 17–18 (emphasis added).

Another factor distinguishing the instant case from others finding RICO claims to be non-core is that here the Trustee is being sued for his acts performed while fulfilling his post-petition duties as a Chapter 11 Trustee. In *In re Harris Pine Mills*, 44 F.3d 1431 (9th Cir.1995), the court addressed the issue of whether a proceeding was core where the plaintiffs had sued the bankruptcy trustee for conduct undertaken in his capacity as trustee subject to the approval of the bankruptcy court. *See id.* at 1437.

In examining this issue, the court quoted the Sixth Circuit Court of Appeals, which held that

---

**25.** Not the Bennett who is a party to this Adversary Proceeding.

**26.** The *United States Lines* and *Ben Cooper* holdings are not limited strictly to contract proceedings. "Courts hold that claims that arise before the debtor's Chapter 11 petition are typically non-core, while claims that arise post petition may directly involve the administration of the bankruptcy estate and, therefore, are core proceedings." *McCord v. Pa-*

*pantoniou*, 316 B.R. 113, 122 (E.D.N.Y.2004) (citations omitted); *see also In re Seatrain Lines, Inc.*, 198 B.R. 45 (S.D.N.Y.1996) (holding that the adversary proceeding was core because plaintiff's cause of action arose after the bankruptcy petition was filed.) *Cf. In re VWE Group, Inc.*, 359 B.R. 441 (S.D.N.Y. 2007) (holding that professional malpractice claims arising out of *pre-petition* misconduct are non-core.)

the claims against the trustee ... would be core proceedings. While the specific causes of action, such as RICO, exist independently of bankruptcy cases, an action against a bankruptcy trustee for the trustee's administration of the bankruptcy estate could not. All claims against [the trustee] related to his conduct during the ... bankruptcy, and should be considered core proceedings. *Id.* (quoting *Sanders Confectionary Prods. v. Heller Fin., Inc.,* 973 F.2d 474 (6th Cir.1992)).

The *In re Harris Pine Mills* court ultimately held that "plaintiffs' post-petition state law claims asserted against the bankruptcy trustee and his agents for conduct inextricably intertwined with the trustee's sale of property belonging to the bankruptcy estate involved a *core proceeding* subject to federal jurisdiction." *In re Harris Pine Mills,* 44 F.3d at 1438 (emphasis added).

Similarly, in *In re DeLorean Motor Co.,* 155 B.R. 521 (9th Cir. BAP 1993) the court addressed the core status of a non-bankruptcy state law claim brought against the trustee by debtor president John DeLorean's counsel, Howard Weitzman. (The action was one for malicious prosecution against the trustee, who had brought a fraudulent transfer claim against John De-Lorean and Howard Weitzman). The Ninth Circuit Bankruptcy Appellate Panel's holding on this issue is worth quoting in full:

> The action arises from the *efforts of officers of the estate to administer the estate and collect its assets and therefore impacts the handling and administration of the estate.* Although the Weitzman action asserts a state law claim, as the functional equivalent of an action against the trustee, it is inextricably tied to the determination of an administrative claim against the estate and

is similarly tied to questions concerning the proper administration of the estate. For these reasons, we determine that Weitzman's action against [the trustee] is within the scope of 28 U.S.C. § 1334(b) *and a core proceeding within the scope of 28 U.S.C. § 157(b).*

*In re DeLorean Motor Co.,* 155 B.R. at 525 (emphasis added).

The Court finds that Bennett's Counterclaims against the Trustee, Simpson, Thacher and Wasserman are core proceedings pursuant to 28 U.S.C. § 157(b).

### Motion to Dismiss Standard

This Court has previously set out in this case the standard for ruling on a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6):

> The court is to dismiss the complaint only if it appears that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. The court should not weigh the evidence but should instead accept the facts as they appear in the complaint as true, to find whether the plaintiff has alleged sufficiently all of the legal elements necessary to state a claim under the law ... Based on the foregoing standards, this Court must analyze Plaintiff's Complaint to determine whether he has alleged any set of facts, along with any reasonable inferences which may be drawn in his favor, which are sufficient to entitle him to relief.

*Breeden v. Sphere Drake Insurance PLC,* 2000 Bankr.Lexis 1693, Adv. Pro. No.97–70049A (Bankr.N.D.N.Y. March 3, 2000) (citations omitted).

On the other hand, "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *In re Atlas Air Worldwide Holdings, Inc., Securities Litigation,* 324 F.Supp.2d 474, 485 (S.D.N.Y. 2004) (citing Moore's Fed. Pract.

§ 12.34[1][b] (3d ed.1997)). In considering a motion to dismiss, the court may consider, in addition to the facts alleged in the complaint and exhibits thereto, "documents that are integral to the plaintiff's claims, even if not explicitly incorporated by reference." *Id.* (citing *Cortec Indus., Inc. v. Sum Holding L.P.,* 949 F.2d 42, 46–48 (2d Cir.1991)).

It is worth noting, however, that under the Rule 12(b)(6) standard the Court is not required to "draw unreasonable inferences or to credit legal conclusions at odds with plaintiff's own factual allegations." *See Solow v. Stone,* 994 F.Supp. 173, 181 (S.D.N.Y.1998).

### First Ground to Dismiss Counterclaims 3 and 6

■ At the August 31, 2006 hearing, the Court noted that both Bennett's Answer and Counterclaims, and his First Amended Answer and Counterclaims, lacked specific dates needed to analyze the Counterclaims for statute of limitations purposes and the Counterclaims' relation to the Plan Release provisions. *See* August 31, 2006 Transcript, pgs. 16–17. At that time the Court gave Bennett the opportunity to amend his Counterclaims in order to provide greater specificity. The Court stated that:

> And failing to amend to the satisfaction of this Court, to the extent that it will be incapable of making a determination of the application of the statute, and in light of my rulings with regard to permissible counterclaims, and the requirement to have asserted these claims at any earlier point in time, I will have no

choice but to dismiss the counterclaim at that juncture.

August 31, 2006 Transcript, p. 21.

On September 26, 2006 the Court subsequently issued an Order Requiring [Bennett] to Amend Counterclaim to Provide Greater Specificity ("September 26, 2006 Order"). That Order reads, in relevant part:

> ORDERED that Bennett may amend the Counterclaims on or prior to October 13, 2006 to provide greater specificity as to the dates on which various allegedly wrongful acts occurred or alleged misstatements were made and to provide greater particularity as to the specific alleged acts and misstatements and specific causes of action that are alleged against each counterclaim defendant; and it is further
>
> ORDERED that if Bennett fails to amend the Counterclaims in accordance with the foregoing paragraph, and the more detailed discussion held during the hearing of August 31, 2006, the Counterclaims shall, without further action by this Court, be dismissed with prejudice.

September 26, 2006 Order.

The Court finds that Bennett's October 13, 2006 Second Amended Answer and Counterclaims did not meet the requirements of its September 26, 2006 Order to provide "greater particularity as to the specific alleged acts and misstatements" or "greater specificity as to the dates on which various allegedly wrongful acts occurred or alleged misstatements were made." *See* September 26, 2006 Order. Bennett's October 13 papers are little more than a scattershot recapitulation of his earlier submissions, with a few additional conclusory allegations included for variety.[27] Thus, based on Bennett's failure

---

27. While not dispositive as to this issue, and keeping in mind the leeway to be accorded a *pro se* litigant, it remains worth noting one court's admonition that "pleading is not an interactive game in which plaintiffs file a complaint, and then bat it back and forth with the Court over a rhetorical net until a viable complaint emerges." *In re Merrill Lynch*

to comply with the terms of the Court's September 26 Order alone, Bennett's Counterclaims must be dismissed.

### Second Ground to Dismiss Counterclaims 3 and 6

 Bennett's alleged injury on both the Breach of Fiduciary Duty and RICO Counterclaims is not direct enough to give him standing to maintain either Counterclaim. Case law in the Second Circuit is clear as to the derivative nature of a shareholder RICO plaintiff's claim:

A shareholder generally does not have standing to bring an individual action under RICO to redress injuries to the corporation in which he owns stock.... Since the shareholder's injury, like that of the creditor, generally is derivative of the injury to the corporation, the shareholder's injury is not related directly to the defendant's injurious conduct.

*Manson v. Stacescu*, 11 F.3d 1127, 1131 (2d Cir.1993).

 The same is true for a shareholder alleging Breach of Fiduciary Duty:

Only when a plaintiff alleges a 'special injury' or the breach of a duty owed uniquely to him (rather than a duty to shareholders generally) may he or she bring a direct action.... Any of the duties owed to [plaintiff] (and allegedly breached by Defendants) were owed to all investors generally as shareholders. The breach of such a general duty is insufficient to confer standing to bring a direct claim for breach of fiduciary duty . . .

*ABF Capital Management v. Askin Capital Management, L.P.*, 957 F.Supp. 1308, 1333 (S.D.N.Y.1997).

Bennett has not demonstrated either a special injury, or that the Trustee owed Bennett a duty he did not owe to all other BFG shareholders.

### Third Ground to Dismiss Counterclaims 3 and 6

 The Plan Releases contained in the Plan and Confirmation Order gave all interested parties 60 days from the June 17, 2002 Confirmation Order to file with the Court a statement of any claim or cause of action against the Trustee, "or forever be barred from asserting such claims or causes of action arising on or before such date." *See* Confirmation Order, p. 9. No argument put forth by Bennett convinces the Court that these Releases should not preclude his asserting Counterclaims 3 and 6. Nothing kept Bennett from filing such a statement with the Court within that deadline. He was fully engaged in the bankruptcy process and litigation throughout this period, and his arguments and objections were heard on many aspects of the case. It is the need for finality which underlies these Releases, and which precludes Bennett from coming forward with these Counterclaims some four years after the Order of Confirmation was granted.

### Fourth Ground to Dismiss Counterclaims 3 and 6

 As the Court stated at the August 31, 2006 hearing, Bennett's Counterclaims are permissive rather than compulsory. *See* August 31, 2006 Transcript, p. 15. This is so because the allegations contained in the Counterclaims concern post-petition acts, while the actions alleged in the Trustee's Complaint are all pre-petition acts. Because the Counterclaims are

*Limited Partnerships Litigation*, 7 F.Supp.2d 256, 266 (S.D.N.Y.1997), *aff'd*, 154 F.3d 56 (2d Cir.1998). *See also Bell v. Hubbert*, 2007 WL 60513, *2–3, 2006 U.S. Dist. Lexis 94547 *6 (S.D.N.Y.2007) (quoting Moore's Federal

Practice [§ 12.34[1][b] at 12–61] to the effect that although pleadings of *pro se* plaintiffs are to be liberally construed, "the duty to liberally construe a plaintiff's complaint is not the equivalent of a duty to re-write it.")

permissive in nature, they are subject to dismissal on statute of limitations grounds.

■ Bennett's argument is that the automatic stay in his personal Chapter 7 case prevented him from bringing his Counterclaims before the Trustee obtained stay relief in April 2006, effectively tolling the statute of limitations from the time of his personal filing, September 5, 1997, until the stay was lifted on April 3, 2006. As the Court also stated at the August 31, 2006 hearing, the automatic stay of Bennett's personal Chapter 7 case did not stay the prosecution of his Counterclaims. *See* August 31, 2006 Transcript, p. 16. *See, e.g., Trans Caribbean Lines, Inc. v. Tracor Marine, Inc.,* 49 B.R. 360, 362 (S.D.Fla. 1985) (holding that "[s]ection 362 by its terms only stays proceedings *against* the debtor. The statute does not address actions brought *by* the debtor.") (emphasis in original) (citations omitted); *In re Martin,* 1992 Bankr.Lexis 1015 * 6–7 (Bankr. E.D.Pa.1992) (noting that "while the automatic stay does not preclude the debtors from prosecution of their claims and counterclaims against the movants … it does prevent the movants' prosecution of their affirmative claims and counterclaims against the debtors …"); *Maritime Elec. Co., Inc. v. United Jersey Bank,* 959 F.2d 1194, 1205 (3d Cir.1991) (holding that "[j]udicial proceedings resting on counterclaims and third party claims asserted by a defendant-debtor are not stayed, while same-case proceedings arising out of claims asserted by the plaintiff are stayed.").[28]

### Substantive Grounds to Dismiss Counterclaim 3

In addition to Bennett's lack of standing, his failure to comply with the Court's September 26, 2006 Order to provide greater particularity, and the Plan Releases approved by this Court, Counterclaim 3 also fails for reasons relating to the specific allegations of fiduciary duty contained therein:

1) ***Violating 18 U.S.C. §§ 152, 153, 154 and 645:***

Bennett's allegations of violations of 18 U.S.C. §§ 153, 154 and 645, even viewed in a light most favorable to Bennett, do not rise above mere conclusions of law. Bennett offers nothing in his papers, or at oral argument during the three separate hearings devoted to these motions, regarding these allegations from which the Court can draw a favorable inference.

■ Bennett's allegations of the Trustee making false oaths and declarations in violation of 18 U.S.C. § 152 do at least comprise well pled allegations. However, they do not allow Bennett to prove any set of facts in support of his claim which would entitle him to relief. Bennett's allegation that the Trustee portrayed BFG as a Ponzi scheme is not a colorable claim. And his allegations that the Trustee submitted materially false and misleading information to this Court constitutes a collateral attack on this Court's Order confirming BFG's Plan. That Order found that the "Trustee has proposed the Plan in good faith … and not by any means forbidden by law …" *See* Confirmation Order, ¶ G. The time for Bennett to allege that the Trustee did not propose the Plan in good faith, but rather with the assistance of false and misleading information, is long past.

---

**28.** *But see In re Bailey,* 306 B.R. 391, 394 (Bankr.D.C.2004) (holding that "a debtor in a Chapter 7 case under the Bankruptcy Code violates § 362(a)(3) when she continues prosecution of a prepetition claim, if the claim pursued is property of the estate.") The *In re Bailey* court cited as examples primarily cases involving a debtor's prosecution, or settlement, of personal injury suits.

Most importantly, however, Bennett lacks standing to maintain a cause of action under any of these statutes. "A private individual may bring suit under a federal [criminal] statute only when Congress specifically intended to create a private right of action." *Hill v. Didio*, 191 Fed.Appx. 13, 14 (2d Cir.2006). *See also Seabury v. City of New York*, 2006 WL 1367396, 2006 U.S. Dist. Lexis 32083 (E.D.N.Y.2006) (holding that most sections of the Criminal Code may only be prosecuted by the government.) *Cf. In re Wood*, 341 B.R. 804 (Bankr.S.D.Fla.2006) (holding that there is no express or implied private right of action arising under 18 U.S.C. § 152).

2) *Conducting an improper personal relationship with a former BFG employee, and*

3) *Fraudulently receiving property from the estate through his improper personal relationship with that employee:*

Similarly, the time for Bennett to make allegations regarding the Trustee's receiving property from the estate through what he describes as his improper relationship with a former BFG employee is also past. Without weighing any evidence, the Court takes judicial notice of its own October 30, 2006 Order Denying Motion of [Bennett] for Removal of the Chapter 11 Trustee ("Order Denying Removal of Trustee"). That Order noted that on December 7, 2005, the Court appointed an Independent Examiner specifically to investigate Bennett's allegations regarding the Trustee's relationship with this former employee. The Independent Examiner's detailed and thorough report found no evidence of any impropriety on the Trustee's part. The Order, which has *res judicata* effect, found that these allegations were "based purely on simple and unadulterated

hearsay despite the fact that Bennett was given ample opportunity by the Independent Examiner to present evidence and support for his allegations ..." Order Denying Removal of Trustee, p. 2.

4) *Conducting the BFG estate as a RICO enterprise:*

This allegation is addressed in this Decision's treatment of Counterclaim 6, *infra.*

5) *Conducting a scheme to close down BFG rather than reorganizing the companies,* and

6) *Liquidating BFG assets, including Equivest, Inc., at below market values:*

These allegations are also, like the 18 U.S.C. § 152 allegations, collateral attacks on the Court's Order of Confirmation, which found that the "Trustee has proposed the Plan in good faith ... and not by any means forbidden by law ..." Confirmation Order, ¶ G. Each of the Trustee's actions related to winding down rather than reorganizing BFG, as well as the sale of various BFG assets, were openly noticed and often litigated before this Court. Many of them were effected only after the Court granted a specific order (e.g., the sale of BFG assets) authorizing the action. Therefore, each of those specific orders, as well as the Confirmation Order, preclude Bennett's maintaining these breach of fiduciary duty allegations now.

*Ground to Dismiss Counterclaim 6*

First, Bennett does not overcome the Trustee's argument that the RICO claims began to accrue, if at all, on March 29, 1996, and are, thus, time-barred by the relevant four year statute of limitations. Bennett counters, however, with the argument that statute of limitations cannot be

raised in a pre-answer pleading, but only in a responsive pleading, which the Trustee has not yet filed. This is not the case, however. *See Santos v. District Council of New York City,* 619 F.2d 963, 967 (2d Cir.1980) (opining that "[t]he limitations defense ... may be raised in a pre-answer motion pursuant to Fed.R.Civ.P. 12(b)(6)" and that "[s]uch a motion is well grounded if it appears on the face of the complaint that the cause of action has not been brought within the statute of limitations.").

█ Bennett also attempts to argue that under the Second Circuit's "separate accrual rule" he suffered an "independent, separate and new injury" resulting from the Trustee's lifting of the stay in Bennett's personal Chapter 7 case in April, 2006. *See* Second Amended Answer and Counterclaims, ¶¶ AA62, AA63; Memorandum of Law in Support of Second Amended Answer and Counterclaims, p. 17. That new injury, Bennett argues, was the $225.00 in "legal related out-of-pocket expenses" he incurred as a result of the stay being lifted in his personal Chapter 7 case, as well as his loss of pension benefits, loss of a New York State tax case, losses from the execution of a judgment against Bennett by Choice Hotels, and from the Trustee's reactivation of this Adversary Proceeding against Bennett in March 2006. *See* Second Amended Answer and Counterclaims, ¶¶ AA43, AA44, and AA62. Although he does not make the argument explicitly, the Court infers Bennett's contention to be that this injury, under the "separate accrual rule" would have started a new, separate RICO statute of limitations period commencing when that stay was lifted in April, 2006.

█ In *Bankers Trust Co. v. Rhoades,* 859 F.2d 1096 (2d Cir.1988) the Second Circuit Court of Appeals did formulate a separate accrual rule for RICO violations. Under this rule,

when a new and independent injury is incurred from the same violation, the plaintiff is again injured in his business or property and his right to sue for damages from that injury accrues at the time he discovered or should have discovered that injury. The logical end result is that a plaintiff may sue for any injury he discovers or should have discovered within four years of the commencement of his suit, regardless when the RICO violation causing such injury occurred.

*Bankers Trust Co. v. Rhoades,* 859 F.2d. at 1103.

In a later decision, however, the Second Circuit noted that the injury had to be "new and independent to be actionable." *In re Merrill Lynch Limited Partnerships Litigation,* 154 F.3d 56, 59 (2d Cir.1998). In *Merrill,* the Court of Appeals found that Merrill's subsequent "dissemination of allegedly misleading reports and other communications and the collection of annual fees" did not constitute new and independent injuries because those efforts were "simply a part of the alleged scheme." *Id.* at 59–60. In an earlier case, the Court of Appeals had found new and independent injuries in *Bingham v. Zolt,* 66 F.3d 553, 559–61 (2d Cir.1995) but only because the new injuries in that earlier case were "caused by a *variety of schemes* which were related only in their ultimate goal." *In re Merrill Lynch Limited Partnerships Litigation,* 154 F.3d at 59 (emphasis added).

The Court does not find that Bennett incurred any new and independent injury after his initial "discovery" of the Trustee's alleged RICO fraud and Bennett's resulting loss of equity in BFG. As a result, the statute of limitations on Bennett's RICO allegations commenced at the beginning of the BFG bankruptcy.

Bennett then attempts to invoke the doctrine of equitable tolling to argue that the statute of limitations was tolled by his own unique situation. Bennett cites *U.S. v. All Funds*, 345 F.3d 49 (2d Cir. 2003) for the proposition that "equitable tolling ... permits courts to extend a statute of limitations on a case-by-case basis to prevent inequity." *Id.* at 54. Bennett argues that his circumstances are unique and merit equitable tolling of the statute of limitations in this case because he is a *pro se*, indigent, incarcerated Chapter 7 debtor who has been "constantly frustrated in his attempts to obtain information ..." *See* Memorandum of Law in Support of [Bennett's] Second Amended Answer and Counterclaims, p. 18–19.

What Bennett fails to mention, however, is that the very case he cites for the proposition that statutes of limitation are subject to equitable tolling also holds that

> [e]quitable tolling may be appropriate if (1) the defendant has actively misled the plaintiff, (2) if the plaintiff has in some extraordinary way been prevented from asserting his rights, or (3) if the plaintiff has timely asserted his rights mistakenly in the wrong forum.

*Becton Dickinson and Co. v. Wolckenhauer*, 215 F.3d 340, 345 (3d Cir.2000) (citations omitted). *Cf. Aslandis v. United States Lines, Inc.* 1992 U.S. Dist. Lexis 15914 * 12 (S.D.N.Y.1992) (opining that equitable tolling "may be appropriate when the defendant has actively misled the plaintiff [,] or the plaintiff has in some

extraordinary way been prevented from asserting his rights.")

The Court can quickly dispose of the notion that Bennett has in some extraordinary way been prevented from asserting his rights. The record of this entire case reveals that this Court has seen to it from the beginning of the case, generally, and of this adversary proceeding in particular, that Bennett has had every opportunity to assert his rights. In fact, aside from alleging that he has been "constantly frustrated in his attempts to obtain information" and that he was unable to afford the price of a copy of the BFG Chapter 11 case docket, Bennett does not even *allege* that he was prevented from asserting his rights. Nor does Bennett allege that he mistakenly asserted his rights in the wrong forum, or that the Trustee actively misled him. Thus, Bennett cannot invoke the doctrine of equitable tolling based solely on his assertion that he is a *pro se*, indigent, incarcerated Chapter 7 debtor.[29]

### Plan Releases/RICO Claim

Bennett's response to the Counterdefendants' argument that the Plan Releases preclude his bringing a RICO counterclaim is to assert that he did not acquire standing to bring the RICO claim, and that the RICO cause of action did not accrue, until his receipt of the July 1, 2002 Notice of the Effective date of the Plan, which effectively stripped him of his equity in BFG. *See* Memorandum of Law in Support of [Bennett's] Second Amended Answer and Counterclaims, p. 11. Thus, according to Bennett, the July 1,

---

**29.** This should not come as a surprise to Bennett, as one of the cases cited in his own Memorandum of Law (in Support of [Bennett's] Second Amended Answer and Counterclaims) held that equitable tolling "allows a court 'under *compelling circumstances*, to make *narrow exceptions* to the Statute of Limitations in order to prevent inequity.' " *U.S. v. All Funds*, 345 F.3d at 54 (quoting *M.D. v.*

*Southington Bd. of Educ.*, 334 F.3d 217, 223 (2d Cir.2003) (emphasis added)). If every indigent, *pro se*, Chapter 7 debtor litigant who was incarcerated and frustrated in his attempts to obtain information were able to have his Statute of Limitations equitably tolled, this exception could in no way be characterized as a narrow one, to be applied only in compelling circumstances.

2002 accrual date defeats both the Trustee's statute of limitations and Plan Release arguments. Bennett relies upon *First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763 (2d Cir.1994) for the proposition that only when Bennett's losses became clear and definite did the RICO claims accrue, and only then did he have standing to assert those claims. *Id.* at 768–9.

The Trustee made two arguments at the October 31, 2006 hearing regarding Bennett's assertions on this point. First, the language of the Plan Releases renders moot any argument about when a statute of limitations begins to run. That language releases the relevant parties "from any and all claims and causes of action arising out of or in connection with acting as [Trustee or Creditors' Committee member] on or before the Effective Date [of the Plan]." BFG Plan, § 6.5. Accrual dates for statute of limitations purposes do not figure into this analysis.

 But, even if accrual dates for statute of limitations were relevant, Bennett's reliance on *First Nationwide* is misplaced. *In re Merrill Lynch Limited Partnerships Litigation*, 7 F.Supp.2d 256 (S.D.N.Y.1997) *aff'd* 154 F.3d 56 (2d Cir. 1998) held that 1) *First Nationwide* was not relevant where the RICO Plaintiffs were holders of equity rather than debt, and 2) in order for a RICO plaintiff's claim to accrue, it "need only be injured, not

that the amount of damages be certain." *In re Merrill Lynch Limited Partnerships Litigation*, 7 F.Supp.2d 256 at 263–64. Continuing to suppose, *arguendo*, that an accrual date were relevant, all Bennett needed to know (in order to start the accrual clock running) was that as an equity holder he would not recover anything, something all equity holders knew early on in the BFG bankruptcy case. *In re Merrill Lynch Limited Partnerships Litigation* held that the statute of limitations begins to accrue "when the plaintiff is on actual or inquiry notice of the fraud." *Id.* at 265. For a plaintiff to be on inquiry notice, he "need not be aware of all aspects of the alleged fraud ... rather, a plaintiff is on inquiry notice at the time at which the plaintiff should have discovered the general fraudulent scheme." *Id.* at 266. Bennett has consistently claimed that he knew of the Trustee's alleged fraud from the very beginning of the bankruptcy case. Thus, he is charged with inquiry notice of the alleged fraud as of the commencement of the BFG bankruptcy case.[30]

### No RICO Violation Adequately alleged

 The Trustee's argument that Bennett's RICO allegations are not adequately pled because they do not properly allege proximate causation is an effective one. *See Anza v. Ideal Steel Supply Corp.*, —— U.S. ——, ——, 126 S.Ct. 1991, 1994, 164

---

**30.** At the October 31, 2006 hearing, Bennett attempted to argue that because the Counter-defendants were proceeding with Rule 12(b)(6) motions to dismiss, his assertion that he did not have notice of his injury until he received written notice of the Plan Confirmation must be accepted as true. This is not so. The Court retains the power to determine whether or when a RICO plaintiff was on inquiry notice of its injury. The Rule 12(b)(6) standard requires the Court to "accept all the non-movant's *allegations* as true." *See Hishon v. King & Spalding*, 467 U.S. 69, 73, 104

S.Ct. 2229, 81 L.Ed.2d 59 (1984) (emphasis added). This does not, however, extend to the non-movant's conclusory statements regarding points of law. *Cf. In re Merrill Lynch Limited Partnerships Litigation*, 7 F.Supp.2d at 266 (finding that the RICO plaintiff was on inquiry notice of the alleged fraud/injury, and granting RICO defendants' motion to dismiss). *See also Solow v. Stone*, 994 F.Supp. at 181 (holding that a court, under the Rule 12(b)(6) standard, is not required "to credit legal conclusions at odds with plaintiff's own factual allegations.")

L.Ed.2d 720 (2006) (holding that "a plaintiff may sue under § 1964(c) only if the alleged RICO violation was the proximate cause of the plaintiff's injury."). The Supreme Court has noted that proximate cause reflects "a demand for some direct relation between the injury asserted and the injurious conduct alleged." *Holmes v. Securities Investor Protection Corp.,* 503 U.S. 258, 112 S.Ct. 1311, 1318, 117 L.Ed.2d 532 (1992). The Trustee's argument is that it was BFG's filing itself which placed Bennett's equity interest at great peril. Because each of the predicate acts alleged by Bennett occurred after BFG was in bankruptcy, no alleged act by the Trustee, all post-petition, could be the proximate cause of Bennett's injury. Bennett's argument that it was the Trustee's decision to liquidate, rather than reorganize, BFG which resulted in his injury, brings him no closer to a proper allegation of proximate causation. This is because proximate cause in the RICO context is even more difficult to establish than it is in the common law context:

> In practice, our cases have held RICO plaintiffs to a more stringent showing of proximate cause than would be required at common law. Thus, at common law, the element of foreseeability is generally satisfied by a showing that the plaintiff was in a foreseeable category of persons who might be harmed.... But RICO cases, in order to combat the specific mischiefs that the RICO statute was designed to address, seem to require that the kind of harm the victim suffered be foreseeable as well. Similarly, it is usually easier for intervenors to break the chain of causation in RICO than it is at common law.

*Lerner v. Fleet Bank, N.A.,* 459 F.3d 273, 285 (2d Cir.2006) (quoting *Moore v. Paine-Webber, Inc.,* 189 F.3d 165, 179 (2d Cir. 1999)).

Another court had occasion to examine the issue of proximate cause in a similar situation and found that

> although the complaint asserts proximate causation in a conclusory fashion, our Court of Appeals requires that a plaintiff allege loss causation with enough particularity to permit a determination whether the factual basis for a claim, if proven, could support an inference of proximate cause ... When factors other than the defendant's fraud are an intervening direct cause of plaintiff's injury, the same injury cannot be said to have occurred by reason of defendant's action.... Thus, in view of plaintiff's failure to allege properly.... proximate causation in either his complaint or RICO statement, plaintiff's RICO claims are dismissed with prejudice, and his motion to amend his complaint is denied.

*Schnell v. Conseco, Inc.,* 43 F.Supp.2d 438, 447 (S.D.N.Y.1999)

The number of other significant "intervening direct causes" of Bennett's injury, such as the vote on BFG's Disclosure Statement and Plan, the Court's Confirmation of the Plan, etc., are alone enough to destroy proximate causation, had Bennett properly alleged it to begin with.

This argument is especially relevant because, as the Trustee notes, the Second Circuit has encouraged district courts to resolve RICO standing issues on proximate cause grounds at the outset, before addressing whether the plaintiff has satisfied "the standing requirements of the underlying statutes whose violations constitute [RICO] predicate acts." *See Lerner v. Fleet Bank, N.A.,* 318 F.3d 113, 122 (2d Cir.2003).

Bennett has not, and this Court believes cannot, adequately plead that the Trustee's

actions were the proximate cause of his injuries.[31]

### Lack of RICO Predicate Acts

As cited by each of the parties, a person alleged to have violated RICO must have engaged in (1) conduct, (2) of an enterprise, (3) through a pattern (4) of racketeering activity, in violation of 18 U.S.C. § 1962(c). *See, e.g., Evercrete Corp. v. H–Cap Ltd.,* 429 F.Supp.2d at 622. At its most basic, a RICO violation must allege racketeering activity, or predicate acts. As noted earlier, in order to survive a Rule 12(b)(6) motion to dismiss, a plaintiff need only allege any set of facts, along with any reasonable inferences which may be drawn in his favor, which are sufficient to entitle him to relief.

In the instant case, however, even accepting the alleged facts that appear in the two Counterclaims as true, and not weighing any evidence, Bennett would be entitled to relief only if this Court was either complicit in each of the Trustee's alleged breaches of fiduciary duty and RICO predicate acts over the past ten years, or was so blind to these breaches and predicate acts that it freely acquiesced in virtually all of them.[32] This is so because nearly every breach of fiduciary duty and RICO predicate act alleged in Bennett's Counterclaims was either litigated before and ruled upon by this Court, or was effected upon notice to this Court and thousands of interested parties to the case (including Bennett), each of whom was free to object to and contest each alleged breach or RICO predicate act.

### Rules Enabling Act

Bennett's argument that the Rules Enabling Act "trumps" the Plan Releases contained in the BFG Plan and this Court's Confirmation Order does not meet the standard to survive a motion to dismiss. It is a legal conclusion masquerading as a factual allegation. Bennett can prove no set of facts in support of this claim which would entitle him to relief. Contrary to Bennett's conclusory statement regarding the effect of the REA on a conflict between the Federal Rules of Bankruptcy Procedure and the Code, the REA actually dictates that "any conflict between the Bankruptcy Code and the Bankruptcy Rules must be settled in favor of the Code." *In re Thomas Bros. Restaurant Corp.,* 195 B.R. 918, 921 (Bankr. C.D.Ca.1996). *See also In re Stoecker,* 179 F.3d 546, 552 (7th Cir.1999) (holding that "in a conflict between the Code and the rules, the Code controls.").

### Conversion from Motion to Dismiss to Motion for Summary Judgment

The Court finds Bennett's argument that the motions to dismiss "relied on numerous items of non-complaint evidence [extrinsic to the pleadings]" (Bennett's Reply Memorandum of Law, p. 5) to be unavailing. This is largely due to his failure to cite an example of even one such item in his papers. Courts have held that on a Rule 12(b)(6) motion, a court may refer

---

**31.** The Trustee's argument that there is no private right of action for mail or wire fraud, however, is incorrect. "A limited private right of action for violations of some sections of Title 18 may be available under [RICO] ..." *Seabury v. City of New York,* 2006 WL 1367396 *6, 2006 U.S. Dist. Lexis 32083 *19 (E.D.N.Y.2006) (discussing enforcement of 18 U.S.C. § 1341). *See also Ayres v. General Motors Corp.,* 234 F.3d 514 (11th Cir.2000) (holding that the federal mail and wire fraud statutes are enforceable through a private federal RICO action.)

**32.** Except, of course, for those alleged acts contained in Bennett's pleadings for which there is not even a scintilla of alleged support, such as the Trustee's alleged embezzlement from the estate, his illegally purchasing property from the estate, obstructing criminal investigations, etc.

to documents attached to the complaint as an exhibit or incorporated in it by reference, to matters of which judicial notice may be taken, or to documents either in plaintiff's possession or of which plaintiffs had knowledge and relied on in bringing suit.... Rule 201 of the Federal Rules of Evidence generally permits a court to take judicial notice of any facts capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.

*Bell v. Hubbert,* 2007 WL 60513 *1, 2006 U.S. Dist. Lexis 94547 *2 (S.D.N.Y.2007) (citations omitted). The Trustee argues, and the Court agrees, that there is nothing in the motions of which the Court could not take judicial notice.

## SUMMARY

### Counterclaim 6

 The Court finds that Bennett is precluded from bringing his RICO Counterclaim on the basis of his lack of standing, the statute of limitations, the Plan Releases as contained in this Court's Confirmation Order, the lack of any adequately pled RICO predicate acts, and his failure to comply with the Court's September 26, 2006 Order. The Court need not reach Bennett's allegations of the BFG Chapter 11 Estate being run as a RICO enterprise. It is worth noting, however, as Bennett argues, that a bankruptcy estate can qualify as a RICO enterprise, as may "any legal entity ..." *See First Capital Asset Management,* 385 F.3d at 173.

 In order to survive a motion to dismiss, however, and as the Trustee notes, a RICO plaintiff must address how the members of the RICO enterprise "worked together and how they operated with continuity of structure." *See In re Smithkline Beecham,* 108 F.Supp.2d 84, 94–96 (D.Conn.1999). Bennett has not

provided factual allegations sufficient to meet this burden. Thus, even if the Counterclaim's RICO allegations were *not* rendered moot on statute of limitations, standing, Plan Release and other grounds detailed in this Decision, his entire RICO Counterclaim would not survive the Trustee's Rule 12(b)(6) motion to dismiss because Bennett has not adequately pled the existence of a RICO enterprise.

As more than one court has noted,

civil RICO is an unusually potent weapon—the litigation equivalent of a thermonuclear device. Because the mere assertion of a RICO claim ... has an almost inevitable stigmatizing effect on those named as defendants ... courts should strive to flush out frivolous RICO allegations at an early stage of the litigation.

*Bell v. Hubbert,* 2007 WL 60513 *5, 2006 U.S. Dist Lexis 94547 *12 (S.D.N.Y.2007) (citations omitted).

Bennett's RICO Counterclaim fails on virtually every standard by which such a claim is to be measured, and should be dismissed.

### Counterclaim 3

Bennett's Breach of Fiduciary Duty Counterclaim must be dismissed because Bennett lacks standing to bring what is actually a derivative claim; because he failed to comply with the Court's Order of Confirmation requiring any party wishing to bring a claim against the Trustee to file with the Court a statement of claim within 60 days of the date of confirmation; and because the statute of limitations on these alleged breaches was not tolled by the automatic stay in Bennett's personal Chapter 7 bankruptcy.

Based on the foregoing, it is hereby

ORDERED that the Trustee's and Simpson Thacher's Motions to dismiss with prejudice Bennett's Counterclaim based on

Breach of Fiduciary Duty by the Trustee and Simpson Thacher, as well as Bennett's RICO Counterclaim against the Trustee and Simpson Thacher, are hereby granted; it is further

ORDERED that Wasserman's Motion to dismiss with prejudice Bennett's RICO Counterclaim against Wasserman is hereby granted.[33]

---

**33.** The relief granted here directly benefits only those parties who requested it by filing the two motions to dismiss Bennett's Counterclaims: the Trustee, Simpson Thacher, and Wasserman. Technically Bennett's Counterclaim 6, alleging violations of the RICO statute, remains open as against Counterdefendants Zolfo, Cooper LLC, Coopers and Lybrand LLP, Paul B. Szlosek, Stewart L. Weisman, Comfort Associates, Inc., Cardigan Acquisition Corp., Cendant Corporation, and Equivest Finance, Inc. *See Answer and Counterclaims*, ¶¶ 174 to 185. However, the Court found that, *inter alia*, Bennett's RICO counterclaim is barred by the four year Statute of Limitations, as well as that Bennett failed to adequately allege proximate cause or the existence of a RICO enterprise. Issue preclusion on the Statute of Limitations point alone would seem to preclude Bennett's successfully maintaining Counterclaim 6 against any of the remaining Counterdefendants.